# UNITED STATES DISTRICT COURT
## NEW YORK:  EASTERN DISTRICT

**FRIEDRICH & FRIEDRICH, LLC**
203 Godwin Avenue
Ridgewood, New Jersey 07450
(201) 670-9600 – telephone
(201) 670-9650 – facsimile
Attorney for Plaintiff
David Friedrich, DF 1522

| | |
|---|---|
| RAMON MANUEL HACHE,<br><br>        Plaintiff,<br><br>   v.<br><br>BARCLAYS BANK, PLC, JOHN DOES 1-100;  JANE  DOES  1-100;  and BUSINESS  ENTITIES  (LLC, PARTNERSHIP  AND  CORPORATION 1-100).<br><br><br>     Defendant. | Civil Action No.:<br><br><br>   ***CIVIL ACTION***<br><br><br><br><br>**COMPLAINT** |

## JURISDICTION OF VENUE

1.      This Court has jurisdiction of the subject matter of the action pursuant to 28 U.S.C. § 1332(a) as complete diversity exists among the parties and the amount in controversy exceeds $75,000.00 exclusive interests and costs.

## FACTS

2.     Ramon Manuel Hache, (hereinafter referred to as "Ramon") is a resident of the State of New Jersey with his principal residence in Ridgewood, Bergen County.  He attended Marist College receiving a degree in Business Administration thereafter he commenced a career in finance and banking.

3.     Barclays Bank PLC is a foreign entity duly organized as a foreign business in the State of New York with its office address at 2701 Queens Plaza, Long Island, City of New York, County of Queens.

4.     Ramon became a Latin American specialist in his chosen field and became well respected and sought out by various entities that required employees with his knowledge, language skills and talent.

5.     Before joining Barclay's Capital Ramon was an employee of Deutsche Bank which had over the years built an impressive Latin-American business.  It built up a wealth management desk catering to the Latin-American region one of its main business developers in this region was Ramon with his substantial contacts in the region, and the respect and trust earned by him permitted him to develop substantial relationships with clients.  In addition he also trained many of the Deutsche Bank personnel for this region.

6.      Barclays Bank PLC was a well-respected institution with its principal business residence in London, England.

7.      Barclays Bank PLC (hereinafter referred to as "Barclays") had developed a worldwide reputation in banking, finance, and wealth management. It had opened various business presences worldwide including but not limited to the United States.

8.      Barclays entered into the United States, establishing an entity known as Barclays Capital Inc., (hereinafter referred to as "Capital"). Capital had various offices in the United States including South Florida and New York. New York City is recognized as the world center of finance and Miami as the epicenter for Latin American financial transactions.

9.      Barclays, through its agents, servants and employees made a business decision in which it intended to grow and develop a Wealth Management platform dedicated to the Latin American region.

10.     On information and belief, Barclays and Capital realized that it had to retain experienced wealth management employees familiar with Latin America and therefore it commenced the solicitation of knowledgeable individuals from other financial entities which it would be competing with in the Latin American region.

11.    A number of Deutsche Bank employees that were employed and trained by Deutsche Bank were recruited and subsequently hired by Capital. On information and belief these employees informed capital that they should seek out and retain the services of Ramon. As a result in April of 2012 Capital did seek out and did meet with Ramon.

12.    In May 2012 Barclay's management team including Capital employees scheduled a meeting with Ramon. The meeting included members of the Latin American team. They    discussed with    Ramon the products that Capital wished    to market and    their intent to establish a large Latin American group. Information as to its business plan and financial platform were submitted to Ramon with suggestions that he would be an important individual in  this  team.  That his financial rewards would be  substantially greater than if he remained at Deutsche Bank.  Barclays' commitment to the region and its planned investment of $500 million dollars in the Americas towards platform improvements was discussed on numerous occasions. The Latin America business was to be an important beneficiary of such investment.

13.    Additional  meetings  were  scheduled  by  Capital  management relative  to the retaining of Ramon. Additional discussions were had regarding the platform to be utilized, the $500 million dollar investment in the region, Barclays' commitment to the region, and financial  benefits  to  Ramon if  he came  to Capital.  At  this  time  news regarding the LIBOR scandal broke.  Ramon called the representatives he spoke to in Human Resources as to whether this would affect their future plans for Latin America

4

and he was told "no worries". Capital and Barclay sent a copy of a press release which was drafted by Barclays' employees.

14.     As a result of the representations by Barclays, Ramon was going to proceed with joining Capital.

15.     On or about July 26, 2012 Capital submitted an offer of employment in accordance with their previous discussions. Ramon accepted the offer. In accordance with the letter of employment Ramon resigned his position with Deutsche Bank.

16.     In accordance with the contract with Deutsche Bank there was a seven (7) month period of time in which Ramon could not be employed and/or solicit his clients per non-compete by any entity that competed with Deutsche Bank and as such received no financial remuneration from only source of employment.

17.     In September 2012 Barclays and Capital scheduled a meeting with Ramon to review with him the procedures of what his duties and responsibilities would be and the logistics involved in the orientation process. The representations made to him confirmed his belief that Capital would be more aggressive than Deutsche Bank, as they had a better platform which would grant to Ramon the ability to increase his portfolio of clients/business, and generate substantial profits for Capital, which would enhance Ramon's position with Capital and substantially increasing his income.

18.     At this meeting Ramon was asked which countries he produced deals from which he did reply and management stated that they were okay with same.

19.     Ramon signed the Employment Agreement on October 11, 2012 and joined Capital's team on October 31 2012, based on the assurance, representation of Barclays and Capital.

20.     The companies and various individual accounts that he generated during his time with Deutsche Bank Ramon began communicating for advice and counsel.

21.     One of the relationships which he had known from Deutsche Bank was a prestigious law firm in Mexico. This law firm had in the past referred potential business in excess of $450 million in dollar denominated assets per year. A group of five Mexican clients of that firm wanted to execute a leveraged U.S. Treasury 30 year bond trade,    Ramon agreed to perform    the    transaction. Paul    Mottola    indicated    that the individual bond positions trade was too much work. He did not process the trade ticket. Thereafter, Ramon reached out to sales managers, Mark Stevenson and Christopher Harrington. For reasons unknown they did not want to assist in this transaction.    Ramon then    had    to communicate    with    Steve Houston, America's Regional Manager who    rather    than    becoming    involved,    forwarded Ramon's communication to Paul  Morton,  head  of  operations.  As  a  result of the actions of executive management of Capital in their refusal to complete this transaction this account was lost and Ramon's reputation with this law firm was irreparably harmed.

6

22.     This type of transaction was essential for Ramon's business and reliance on Capital's ability to perform large and complicated transactions that would generate substantial income to Capital.

23.     The inability of Capital to supply the necessary backup personnel or infrastructure to complete this type of transaction, which is normal and expected in the wealth management field concerned Ramon as it appeared that the information that was submitted to him during the exploratory meetings by Barclay's agents, servants and employees was inaccurate and apparently was submitted to him to mislead and fraudulently induce Ramon to leave his position at Deutsche Bank. As a result of the failure of Capital to process this transaction, Ramon's reputation was negatively impacted and a source for approximately $1, 200,000 per year in business was lost.

24.     In July 2013 Barclays and Capital announced "Project Ocean". In essence this project by Barclays board of managers was to conduct de-risk assessment in order to determine countries Barclays would continue business therein. This project was specifically for the purpose of conducing a risk assessment to address that another Libor and other incidents did not occur.

25.     Ramon at that time did not understand that Barclays in essence was making a determination regarding what countries it would be prospecting for business. It was understood from information received by Ramon that the Latin American countries were

included in the list of countries being reviewed by management with the intent to terminate all business transactions.

26. Upon information and belief Barclays was contemplating and knew the whole of Latin America was under review to terminate all business within the Continent of South America, Central America and the Latin American islands; while at the same time soliciting Plaintiff to join their firm.

27. As result of Ramon's numerous contacts and reputation he received communications from individuals who were citizens of Israel. This substantial family business, who were clients of Deutsche Bank, wanted to acquire certain investments in New York City and other cities in the United States. Ramon was advised that he could not handle transactions in the United States as he was assigned to the Latin American desk. Management took Ramon's clients and gave them to other individuals who dealt with wealth management in the United States. The result was Ramon did not receive any benefit or remuneration for this new business which he produced for Capital and Barclays.

28. There were additional incidents of bond desks being unresponsive or ignoring requests which caused Ramon to lose various trades.

29. Capital and Barclays formally announced to the world its decisions to exit Latin America. Further it notified all existing Latin American clients that no new transactions

or accounts would be accepted after December 2013. In addition all Latin American accounts would have to be closed on or before June 30, 2014. In essence Barclays had terminated all of the clients and new business transactions of Ramon without any previous notice. Barclays by its actions terminated relationships which he had developed over the past 10 years.

30.   Further Capital and Barclays by its actions terminated the employment of Ramon and irreparably harming his name and reputation with his clients and potential clients in the region knowing that all of Ramon's business came from Latin America and the only reason he joined Barclays was due to Barclay's intent to expand in Latin America.

31.   In October of 2013 Tom Lee emailed to its Latin American wealth management team stating: "While you have an opportunity to stay with Capital, if you wish to work toward the establishment of a successful domestic focused business ,we understand and encourage your exploration of opportunities elsewhere that may be more aligned with your individual interests and those of any impacted clients." As Ramon was a Managing Director of Capital's wealth management in Latin America and was not consulted with this decision prior to its enactment and that Capital and Barclays chose to communicate with all of his clients without his prior notice or consent advising all of the Latin American Wealth Management team that they should explore other opportunities as it is apparent there was no opportunity remaining with Barclays or Capital which effectively terminated Ramon's employment. Capital and Barclays did not offer to

Ramon the return of his clients who wished to develop their assets, wealth in the United States.

32. As a result of the actions of Capital and Barclays, Ramon's ten (10) plus year investment in establishing a reputation in the Latin American region was effectively ruined. Capital and Barclays prohibited Ramon to continue to prospect, develop and represent his clients in Latin America, South America and in essence all Spanish speaking countries in the Americas which Ramon understood, included economic powerhouses such as Brazil, Mexico and Argentina, all three (3) countries being in the top 25 largest GDP's in the world, there was even a question whether Ramon could continue representing clients in Puerto Rico.

33. Ramon's peers, who worked with clients investing with the Latin American desk, had their employment terminated which included 11 in New York City and 23 in Miami, being U.S. residents with Spanish and Latin ancestry in their country of national origin.

34. Barclays and Capital's decision to vacate themselves from all of Latin America which by definition includes South America, Central America and all Caribbean islands of Spanish decent which had the cumulative affect of terminating almost every if not all wealth managers and other white collar positions with Hispanic and other Latin speaking decent and/or natural origin.

35.     Barclays and Capital's actions in its failure to address its internal issues pertaining to the nationality of Ramon's clientele and internal question of terminating all wealth management business from countries with Spanish ancestry and failing to inform Ramon of the potential risks joining Barclay's Latin Americo's desk made a life altering decision based on erroneous and withheld information.

36.     Upon information and belief Barclays is the only large international bank to make such Draconian Cross Border Rules and other Rules of Engagement as to its financial dealings and termination of dealings with whole continents mostly of developing countries excluding all business with Latin America while not one bank to okay such steps and instead drafted new Cross Border Rules to stem escalated risk in certain parts of the world.

37.     As a result of Barclays withholding essential information which he required in making a determination as to whether he should terminate his relationship with Deutsche Bank resulted in Ramon making a life altering decision based on misinformation supplied to him by Barclays agents, servants and employees.

38.     Ramon on several occasions did offer to coordinate and establish Rules of Engagement and Cross Border Rules for Latin America as he had helped establish at Deutsche Bank which were rejected/ignored by management.

39.     By indiscriminately terminating all connections with the whole continent of South America along with Central America and its islands was not only discriminating in intent but in effect as the employees who work in these areas, most if not all were of South/Central American decent and/or Spanish/Portuguese speaking.

40.     Barclays did not remove itself from any other continent other than Latin America.

## FIRST CAUSE OF ACTION
## ANTICIPITORY BREACH OF CONTRACT

41.     Plaintiff Ramon Manuel Hache sets forth each and every allegation set forth in Paragraphs 1-40 as if same were fully set forth herein.

42.     Barclays, through its managers, Board of Directors, and other agents, servants and employees had full and complete knowledge of any and all issues through its related entities that it was in compliance with the rules and regulations of the banking industry.

43.     Barclays' agents, servants and employees as aforestated, solicited and thereafter entered into negotiations with Ramon to enter into a contract with Barclay's and Capital Inc. (hereinafter referred to as "Capital").

44.     Barclays did offer to Ramon the sum of 1.2 million dollars, U.S. currency if he would enter into an Employment Agreement with Capital.

45.     Barclays made various representations as to its ability to fund and pursue business in the Spanish and Portuguese speaking Americas and more specifically, the Latin American region.

46.     Barclays knew that Ramon was an expert in Latin America and his book of business contacts, connections and knowledge of finance were substantially attached to the region and understood the requirements to conduct a profitable business in this region.

47.     Barclays knew that Ramon was relying on its representations as to its abilities to proceed with establishing its wealth management platform in Latin America and would be accepting employment with Capital based on its representations.

48.     Barclays individually and by its agents, servants and employees knew that it had certain issues with a pending investigation relative to the Libor scandal but advised Plaintiff that it would not affect their continued business development in Latin America.

49.     Barclays also knew that by terminating Executive Officer Bob Diamond and replacing him with Anthony Jenkins that it was Barclays' intent to reorganize its business plans and change directions which included Latin America without advising Plaintiff of same, while at the same time soliciting both Plaintiff and his business.

50.     Ramon did question Barclays and its agents, servants and employees relative to the Libor scandal and whether it would have any impact on establishing a wealth management platform in the Latin American region.

51.     In fact management requested a list of countries during its solicitation which Ramon did business which was provided and was not questioned by Barclays after receipt of same.

52.     Barclays, through its agents, servants and employees indicated that the Libor scandal would not have any impact on their pursuing their business plan for the Latin American region.

53.     Barclays knew that if it did not continue to pursue the establishment of a business in Latin America that it would have substantial impact on Ramon.

54.     Barclays, having this information failed to inform Ramon that the Libor and other issues could affect the establishment of the Latin American region and/or removal from the region entirely.

55.     Barclays, having all of this information and understanding that upon any form of termination by Ramon he would have an obligation to repay the 1.2 million dollar Note which was entered into between Barclays and Ramon which was the payment to induce Ramon to work for a Barclays subsidiary Capital.

14

56.     Further Barclays knew and understood that without that significant payment Ramon would not relocate his employment from Deutsche Bank to Capital and further had to stop working for seven (7) months pursuant to non-compete.

57.     Further Barclays knew that the change in direction of the bank's business and diversity from the region would irreparably harm Plaintiff but failed to notify of same.

58.     Therefore, Barclays, through its agents, servants and employees did repudiate its duties and responsibilities to establish a Latin American region and then divested itself completely from the region; that the essential part to the Note agreement was the continued establishment of a Latin American region; upon Barclays failure to perform in accordance with its duties and responsibilities the Plaintiff, Ramon could not perform in accordance with the agreement; inhibiting the Plaintiff from performing his duties and responsibilities which would have generated substantial income and continued employment which would have resulted in the repayment of the Note to Barclays; the failure of Barclays' compliance with its representation resulting in substantial damage to the Plaintiff, Ramon, which included but not limited to the repayment of the 1.2 million dollar Note, loss of income which would have been generated as a result of employment in the Latin American region and losses by leaving Deutsche Bank.

59.     The actions of Barclays, through its agents, servants and employees was willful in that Barclays understood that by its failure to fully and completely disclose to Ramon the

potential damage that could result to Barclays as a result of the Libor and other corporate governmental issues would result in Ramon making a decision on incomplete and misleading information for the benefit of Barclays.

**WHEREFORE**, Plaintiff Ramon Manuel Hache demands judgment against the Defendant Barclays Bank PLC for compensatory and punitive damages, with costs, legal fees and interest.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT**

60.     Plaintiff Ramon Manuel Hache sets forth each and every allegation set forth in Paragraphs 1-59 as if same were fully set forth herein.

61.     As aforestated, Barclays entered into an agreement which is set forth in the Note in which it made certain representations relative to its obligations upon the Plaintiff, Ramon being employed by one of Barclay's subsidiary entities.

62.     Ramon, in accordance with the terms and conditions of the agreement did comply fully and completely. During his employment with Capital he did produce accounts for Capital.

63.     The Defendant did fail to perform in accordance with its agreement in that it was understood that the sum being disbursed to Ramon was to be paid over a certain period of

years as a result of Ramon's generation of business, income for Capital from business generated solely from Latin America. As a result of the actions of Barclays in that it failed to comply with its representations as to their intent to expand their interest in Latin America when at the same time Barclays was contemplating complete removal of all interests in Latin America with the plan of not only withdrawal but to deny access to Barclays investment and banking services for individuals or businesses that are from the region or hold monies in the region, in essence Plaintiff's whole business.

64.     As a result of Barclays' failure to comply with its representations that it would fund the Latin American project and at its full and complete removal from the region would have irreparable effects on the Plaintiff herein which would result in his inability to repay the 1.2 million dollar obligation as set forth in the Note nor any ability to conduct his business; and the Defendant, Barclays and its agents, servants and employees having full and complete knowledge of same still went forward, failing to inform Ramon of his potential liability and placed the Plaintiff in a position in which he was terminating his relationship with Deutsche Bank, with the loss of substantial income and the termination of special relationships.

65.     The actions of Barclays through its agents, servants and employees did result in substantial financial harm to the Plaintiff herein.

        **WHEREFORE**, Plaintiff Ramon Hache hereby demands judgment of Barclays Bank PLC for compensatory and punitive damages, legal fees, interests and costs of suit.

## THIRD CAUSE OF ACTION "FRAUD – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING"

66.     Plaintiff Ramon Manuel Hache sets forth each and every allegation set forth in Paragraphs 1-65 as if same were fully set forth herein.

67.     Ramon and Barclays entered into an agreement set forth in the Note in which sums were to be disbursed to Ramon as a conditioned precedent.

68.     The Defendant, Barclays knew that its agents, servants and employees did violate various rules and regulations relative to the establishing a discount rate known as Libor.

69.     Barclays made various representations to Ramon in which it indicated and so represented that it would be funding the Latin American region platform with at least $500,000,000.00 (five hundred million dollars) as well as that it would be establishing the Latin American region with sufficient backup manpower so that it could compete with management platform for Latin America.

70.     While making these representations to Plaintiff at the same time and upon information and belief prior to contact with Ramon Defendant had strategies in place to conduct risk management analysis in which total divestiture from regions of the world which was information withheld that was necessary for Plaintiff to make his life changing decision to move his plan of business.

71.     Plaintiff detrimentally relied on misinformation and/or failure to provide essential information which would have altered Ramon's decision making process but was purportedly withheld so as not to affect Plaintiff's decision to accept employment.

72.     The withholding of essential information was the direct cause of Plaintiff's irreparable harm.

73.     The actions of Barclay, with the express knowledge that its failure to respond openly and truthfully to the Plaintiff as to its internal issues in compliance with its statements would result in the Plaintiff not accepting the offer of employment which could endanger the Defendant's intent to establish a platform in Latin America.

74.     Barclays, knowing that the information that was being requested by the Plaintiff can only be obtained from Barclays knew that if it did not fully, completely, truthfully reply that Ramon would not be making a decision to leave Deutsche Bank on accurate, complete information.

75.     As a result, Barclays understood that if in fact it did not fund the Latin American platform would result in Ramon's inability to pursue Latin American clientele for the wealth management platform being developed by Barclays through Capital, his sole explicit purpose at Capital.

76.     In addition thereto, Barclays understood that if it did not finance the platform as it represented, Ramon would be irreparably and permanently harmed.

77.     Barclays' conduct was deliberate in that it failed to give truthful responses to the questions submitted to it by the Plaintiff with a realization that if it was truthful in its responses Ramon would not accept the position being offered to him, to the detriment of Barclays and its business entity, Capital.

78.     The actions of Barclays were deliberate, in that it was attempting to obtain talented individuals in the wealth management Latin American market from other financial institutions for its own financial benefit, to the detriment of anyone that accepted its misleading information and payment, resulting in substantial financial harm to the Plaintiff among others.

        **WHEREFORE**, Plaintiff, Ramon Manuel Hache demands judgment against the Defendant, Barclays Bank PLC for compensatory and punitive damages, legal fees, interest and costs of suit.

### FOURTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD IN CONTRACT

79.     Plaintiff, Ramon Manuel Hache sets forth each and every allegation set forth in Paragraphs 1-78 as if same were fully set forth herein.

80.     Ramon and Barclays entered into an agreement as set forth in a Note in which
sums of money, that being 1.2 million dollars was paid to Ramon as a condition
precedent at the time an employment agreement was entered into with a subsidiary of
Barclays Capital. The Note specifically set forth specific understandings and agreements
which the Defendant understood it had an obligation to comply therewith.

81.     Barclays, through its agents, servants and employees made various
representations to Ramon as to how it was going to establish a wealth management
program in Latin America as set forth herein. It made various representations as to its
ability to fund the Latin American project with a minimum of $500,000,000.00 (five
hundred million dollars), maintain a platform to satisfy the normal needs of its accounts.

82.     The Defendant herein knew that there was an ongoing investigation as to certain
acts by agents, servants or employees of Barclays, relative to the manipulation of certain
interest rates, known as Libor. It understood that that investigation could result in various
penalties and fines that could be issued by the controlling boards. It further understood
that risk management assessments which were later to be known as "Project Ocean" as
established by Barclays' new Executive Officer would have a direct impact on Ramon's
ability to conduct the business which he specialized in and was retained to work in that
specific region under review.

83.    Barclays, through its agents, servants and employees made various representations knowing that it may not be able to fulfill the representations that were made to Ramon as well as other individuals that it had employed.

84.    Barclays, through its agents, servants and employees did not proceed with the Latin American project and instead removed itself from the region entirely with no employee permitted to do business in the region or accept funds from the region, Plaintiff's whole business, to the financial detriment of this Plaintiff.

**WHEREFORE** Plaintiff, Ramon Manuel Hache demands judgment against the Defendant, Barclays Bank PLC for compensatory and punitive damages, legal fees, interest and costs of suit.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT OF DEFENDANT'S OWN FORUM
## SECLECTIONS CLAUSE

85.    Plaintiff Ramon Manuel Hache sets forth each and every allegation set forth in Paragraphs 1-84 as if same were fully set forth herein.

86.    Ramon and Barclays entered into an Agreement as set forth in a Note in which was 1.2 million dollars was paid to Ramon as a condition precedent that he would accept employment with Capital, a subsidiary of Barclays. The Note specifically stated that obligations under the Note would not be governed by FINRA and that Barclays would not be an employer.

22

87.     Upon information and belief, Barclays drafted the Note with full knowledge of their intention not to arbitrate disputes under the Note in FINRA.

88.     Barclays was in a position of superior knowledge, regarding matters of FINRA arbitibility and its intent prior to any default to assign the Note to Capital, who would attempt to modify the Note provisions that all disputes would be submitted to the Courts of New York and file a Petition to FINRA for arbitration.

89.     Barclays colluded with Capital in having Ramon believe that FINRA would not have jurisdiction of any dispute under the Note as under FINRA if a favorable award was granted to Barclays and if the award was not satisfied within thirty (30) days FINRA could terminate any licenses held by Ramon effectively making Ramon unemployable.

90.     Barclays abused its position of trust, by canceling its intent to modify the terms and conditions of the Note to the detriment of Ramon by assigning the Note to its wholly owned subsidiary, Capital which was a member of FINRA.

91.     Barclays, throughout the negotiations, unknown to Ramon, has submitted false and misleading information that was only available to Barclays, which Barclays knew, or should have known that Ramon would be relying on the responses to be accurate, and that Barclays would not intentionally submit false and misleading information.

92.    Plaintiff would not have agreed to accept the Note had  he been informed of Barclays' intentions and the false and misleading information.


WHEREFORE Plaintiff, Ramon Manuel Hache demands judgment against the Defendant, Barclays Bank PLC for compensatory and punitive damages, legal fees, interest and cost of suit.


### SIXTH CAUSE OF ACTION
### "BREACH OF FIDUCIARY DUTY"

93.    Plaintiff Ramon Manuel Hache sets forth each and every allegation set forth in Paragraphs 1-92 as if same were fully set forth herein.


94.    Ramon and Barclays entered into an agreement as set forth in a Note in which sums of money, that being $1.2 million dollars was paid to Ramon as a condition precedent for the execution of an Employment Agreement to be entered with a subsidiary of Barclays. The Note specifically set forth specific understandings and agreements which Barclays understood it had an obligation to comply herewith.


95.    Barclays through its agents, servants and employees made various misrepresentations to Ramon as to how it was going to establish a wealth management program in the Latin American region as set forth herein. It made various representations as to its ability to fund the Latin American project with a minimum of $500,000,000.00 to maintain a platform to satisfy the needs of its accounts.

96.    Barclays through its agents, servant and employees made various representations knowing that it may not have been able to fulfill the representations that were made to Ramon as well as other individuals that it had employed.

97.    The aforementioned representations by Barclays through its servants, agents and employees represented a personal interest conflict which should have been discussed more truthfully under their fiduciary duty of loyalty.

98.    By failing to adequately represent the status of Barclays' ability to move forward with Plaintiff's clientele as well as the potential effects of the Libor scandal contrary to the interests of Plaintiff.

99.    As a direct result of the aforementioned misrepresentations, Ramon resigned from his position at Deutsche Bank, moved his clientele to Barclays and sustained significant losses upon Barclay's inability to maintain its platform in Latin America and then withdraw from doing any wealth management in Latin America.

**WHEREFORE** Plaintiff, Ramon Manuel Hache demands judgment against the Defendant, Barclays Bank PLC for compensatory and punitive damages, legal fees, interest and costs of suit.

## SEVENTH CAUSE OF ACTION
## "ESTOPPEL"

100.    Plaintiff Ramon Manuel Hache sets forth each and every allegation set forth in Paragraphs 1-99 as if same were fully set forth herein.

101.    Defendant's misrepresentations regarding the ability of Barclays to move forward with Plaintiff's clientele as well as Barclays plans to do business in Latin America amounted to a false representation and/or concealment of material facts from Ramon.

102.    The aforementioned misrepresentations as to the ability of Barclays to move forward as well as the effects of the Libor scandal were intended such that Plaintiff would act upon them and begin employment with Defendant.

103.    Upon information and belief, Defendant had knowledge of the actual facts regarding the ability of Barclays to move forward with Plaintiff's clientele as well as the effects of the Libor scandal as well as Barclays' intentions regarding Latin America seeking business in Latin America.

104.    Plaintiff lacked knowledge of the facts regarding the effects of the Libor scandal on the ability of Barclays to move forward with business from Plaintiff's clientele as well as Barclays plans for future operations in Latin America.

105.    Plaintiff relied upon the truthfulness of Defendant Barclays related to the representations regarding the effects of the Libor scandal, the ability of Barclays to do continued business in Latin America as well as the ability of Barclays to accommodate the needs of Plaintiff's existing clientele.


        **WHEREFORE** Plaintiff, Ramon Manuel Hache demands judgment against the Defendant, Barclays Bank PLC for compensatory damages, legal fees, interest and costs of suit.

**EIGHTH CAUSE OF ACTION**
**"UNJUST ENRICHMENT"**

106.    Plaintiff Ramon Manuel Hache sets forth each and every allegation set forth in Paragraphs 1-106 as if same were fully set forth herein.


107.    In accordance with Ramon's position as an employee of Barclays he secured Israeli wealth management clients for Barclays.


108.    Ramon did not receive any benefit for this new business which he produced as that new business was not generated from Latin America. That the new clients would be acquiring assets in the United States and therefore the account would be assigned to the appropriate desk.

109.    Under the aforementioned circumstances Barclays has a legal and equitable obligation to account for the benefits it received from the business produced by Ramon and then to pay to Plaintiff his appropriate commission.


**WHEREFORE** Plaintiff, Ramon Manuel Hache demands judgment against the Defendant, Barclays Bank PLC for compensatory damages, legal fees, interest and costs of suit.


## NINTH CAUSE OF ACTION
## "CONSTRUCTIVE TERMINATION"

110.    Plaintiff Ramon Manuel Hache sets forth each and every allegation set forth in Paragraphs 1-109 as if same were fully set forth herein.

111.    Barclays, through its agents, servants and employees made numerous representations to Ramon concerning their plans to build a wealth management platform in Latin America, Ramon's future at the company, and Ramon's ability to make considerably more income than was possible at his prior position at Deutche Bank upon accepting employment with Capital.

112.    Ramon joined Capital's team on October 31st, 2012 in accordance with his agreement with Barclays.

113.    Barclays announced the cessation of all business endeavors in Latin America in accordance with a specific time frame, that is no new accounts after December 2013 could be opened and the closure of all Latin American accounts by June 30th, 2014.

114.    As a direct result of the aforementioned actions, Plaintiff's directorship for Latin America was terminated as there was no longer a Latin American platform; as was the case for a number of Plaintiffs similarly situated co-workers.

115.    Ramon had complied with the requests of Barclays but as a result of Barclays Bank refusal to fund the establishment of a Latin American platform with $500 million dollars and maintain the platform resulted in Ramon and other employees to be able to complete transactions in and for its clients in Latin America.

**WHEREFORE** Plaintiff, Ramon Manuel Hache demands judgment against the Defendant, Barclays Bank PLC for compensatory damages, legal fees, interest and costs of suit.

## TENTH CAUSE OF ACTION
## "NEW YORK CITY HUMAN RIGHTS LAW"

116.    Plaintiff Ramon sets forth each and every allegation set forth in Paragraphs 1-115 as if same were fully set forth herein.

117.    At the onset of Ramon's employment with Barclays there were thirty-four (34) individuals working primarily with investors in Latin America, in positions requiring higher education, most of which were Spanish speaking or of Latin ancestry.

118.    During Ramon's short tenure at Barclays, thirty-four (34) of the aforementioned employees focusing on Latin American investors had their employment contructively terminated, including eleven (11) in New York and twenty-three (23) in Miami.

119.    Barclays, by their conduct committed an unlawful discriminatory practice based on disparate impact of their practices, such that its basis is not substantially job related and contributes to the disparate impact; despite racial neutrality on its face.

120.    Upon information and belief, Barclays' conduct was based on the aforementioned employees' race and/or national origin.

        **WHEREFORE** Plaintiff, Ramon Manuel Hache demands judgment against the Defendant, Barclays Bank PLC for compensatory and punitive damages, legal fees, interest and cost of suit.

### ELEVENTH CAUSE OF ACTION
### "NEW YORK STATE HUMAN RIGHTS LAW"

121.    Plaintiff Ramon Manuel Hache sets forth each and every allegation set forth in Paragraphs 1-120 as if same were fully set forth herein.

122.    At the onset of Ramon's employment with Barclays there were approximately thirty-four (34) individuals working primarily with investors in Latin America, in positions requiring higher education, most of which were Spanish speaking and/or of Latin American ancestry.

123.    During Ramon's short tenure at Barclays, thirty-four (34) of the aforementioned employees focusing on Latin American investors had their employment constructively terminated, including eleven (11) in New York and twenty-three (23) in Miami.

124.    Despite the racial neutrality Barclays by their conduct created a hostile and/or abusive work environment in which the ongoing and unilateral termination of employees of Latin origin or who are Spanish speaking unreasonably interfered with Ramon's work performance.

125.    Upon information and belief, Barclays' conduct was based on the aforementioned employees' race and/or national origin.

        **WHEREFORE** Plaintiff, Ramon Manuel Hache demands judgment against the Defendant, Barclays Bank PLC for compensatory and punitive damages, legal fees, interest and cost of suit.

## TWELTH CAUSE OF ACTION
## "AIDING AND ABETTING FRAUD"

126.    Plaintiff Ramon Manuel Hache sets forth each and every allegation set forth in Paragraphs 1-125 as if same were fully set forth herein.

127.    Barclays and Capital knowingly perpetrated a fraud upon employees and the securities by entering into a Note agreement establishing non-arbitability under FINRA, while fully intending to do so upon litigating obligations under the Note.

128.    Upon information and belief, Barclays and Capital substantially assisted one another in the concerted effort to carry out the underlying act.

    **WHEREFORE** Plaintiff, Ramon Manuel Hache demands judgment against the Defendant, Barclays Bank PLC for compensatory and punitive damages, legal fees, interest and cost of suit.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all causes of actions permitted by the Court.

FRIEDRICH & FRIEDRICH, LLC
Attorney(s) for Plaintiff, Ramon Hache

_____

David B. Friedrich, Esq.

Dated: October 10, 2014

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all causes of actions permitted by the Court.

FRIEDRICH & FRIEDRICH, LLC
Attorney(s) for Plaintiff, Ramon Hache

David B. Friedrich, Esq.

Dated: October 17, 2014